IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF SOMERSET.

ARGUED AT JUNE TERM, 1843.

BENJAMIN HILTON *versus* SAMUEL HOMANS & *al.*

Where the plaintiff makes and signs a written agreement to transfer his interest in a parcel of land to the defendant for a specified consideration, parol evidence is inadmissible to show, that the defendant, before or at the time of making such contract, had promised to {pay therefor an additional consideration.

If one of two tenants in common of an interest in a parcel of land under a bond, induces the other to sell to him his share for a stipulated price per acre, by reason of a false affirmation that he had contracted to sell his own share to a third person for the same price, and after this purchase is completed, sells the whole to the same third person at a greater price per acre, the first seller cannot recover of his grantee the amount of the difference in the sales in an action for money had and received.

AT the trial before WHITMAN C. J., after both parties had introduced their evidence, objections to the admission thereof having been made on each side, a nonsuit was entered, under an agreement of the parties, that the nonsuit should be set aside, and a default entered, if in the opinion of the Court, the plaintiff was entitled to recover upon all the legal testimony in the case, the Court being authorized to draw such inferences from the evidence, as a jury might do legally.

The substance of the declaration, and sufficient of the evi-

dence to understand the questions of law, may be found in the opinion of the Court.

*Boutelle* and *Evans* argued for the plaintiff.

To show that the form of action was right, they cited 8 Greenl. 32. To show that the defendants, as agents, were not justified in employing and paying others for procuring a sale by their management, even although others did the same, they cited 17 Mass. R. 410; 4 Esp. R. 179; 2 Johns. Cas. 99; 6 Johns. R. 194; 8 Johns. R. 444; 5 Hals. 87; 3 Metc. 384. To show that the defendants were responsible to the plaintiff, and in this form of action, on the ground of fraudulent representations, they cited 3 T. R. 51; 11 Pick. 532; 7 Pick. 550; 1 Metc. 593; 17 Pick. 545.

*Wells* argued for the defendants.

To show that the plaintiff could not claim under the contract, and at the same time set it aside as having been fraudulently obtained, he cited 14 Maine R. 364. That the law will not raise an implied promise in addition to an express one in writing. 7 Mass. R. 107. That contracts of sale cannot be avoided, as fraudulent, because of erroneous statements in regard to the price. 1 Story's Eq. § 199.

The opinion of the Court, TENNEY J. taking no part in the decision, having been of counsel in the case, was drawn up by

WHITMAN C. J. — This is an action of assumpsit on a special contract, and for money had and received.

The evidence, at the trial, having been exhibited, it was agreed, that a nonsuit should be entered; and if, upon a report of the evidence by the Judge who presided at the trial, the Court (being at liberty to draw such inferences therefrom as a jury might) should be of opinion, that the action was maintainable, the nonsuit should be taken off and a default entered.

The first question is, does the evidence support the count on the special contract? It is averred, in substance, that the

plaintiff and defendants, having a joint interest in certain parcels of land, the defendants on the 30th day of March, 1832, having contracted to sell the same to certain individuals, and to induce the plaintiff to sell his right to the defendants, so that they might carry into effect their contract, represented to him, that they had agreed to sell to those individuals, at the rate of forty cents per acre, and promised to pay him for his interest therein at the same rate, that they had agreed to sell for to said individuals; or the same amount they might receive therefor from said individuals; and upon such representation and promise he did thereupon transfer to them his interest in said lands; and avers that they in fact received for the same at the rate of fifty cents per acre. On looking into the evidence we find that, whatever may have been the conversation concerning the contract, it was finally reduced to writing, which was subscribed by the plaintiff. No principle is more familiar than that all conversations at and about the time, and preparatory to the formation of a contract, are inadmissible to explain or vary the terms of it, when reduced to writing, and subscribed by the party thereto. The transfer, therefore, signed by the plaintiff, of his interest in the two parcels of land to the defendant, Homans, for a specified consideration, should preclude him from showing, by parol, that there was other and a greater consideration for the transfer, which the defendants had promised to pay. To admit him to do so, would be permitting him by parol, to vary the terms of a contract, which he had caused to be reduced to writing, and had actually signed with his own hand.

The count for money had and received is in the same predicament with the special count. It is dependent for its support upon the same evidence. The subject matter of it is clearly merged in the written contract of transfer.

But, if this estoppel were out of the way, we do not see that the plaintiff could recover in assumpsit. The evidence would not support his special count. No special contract, such as is set forth, appears to have been entered into by the defendants jointly, or severally. They merely, though per-

haps falsely, stated what they had contracted to sell for. This, it is alleged, was done to induce the plaintiff to transfer his right in the lands to them ; and that the transfer was made accordingly on [the thirtieth day of March, 1832, the time when the contract is alleged to have been executed. But they do not appear to have made any promise to pay any thing more, in any event, than is named in the transfer ; but the inference from the evidence is strong, that they utterly refused to pay any thing beyond the amount actually paid. There is still another variance. The agreement was for a conveyance to Homans, and not to both defendants, and the conveyance was made accordingly. And as to money had and received, it would seem, if the witness, Colby, is to be believed, (and we know of no reason why a jury should not have believed him,) that if any thing was received, over and above forty cents per acre, it was for Colby's benefit, and not for the benefit of either the plaintiff or the defendants. From the testimony it appears that they never realized any thing beyond that amount to their own use.

If there be any ground upon which the plaintiff could have hoped to recover against the defendants, it was that of mis-representation and deceit. There certainly does not seem to have been entire good faith on their part towards him ; and if in an action framed for the purpose, any damage could have been made to appear to have occured to the plaintiff, arising from such cause, he might have recovered for the amount of it. But it is difficult to perceive how the plaintiff was in fact greatly injured. He might not have been able to show that the plaintiff did not realize as much for his interest in the lands, as it was actually worth. It is true the defendants in-duced Usher and others to give fifty cents per acre for it ; but the evidence tends to show that this was accomplished by means of circumvention, such as we have little reason to doubt were too common in those days ; and would afford no very satisfactory criterion by which to judge of the actual value of the land.

The plaintiff, it is manifest, by selling at forty cents per acre had much more than doubled his money in a very short space of time : and with such good fortune, it is somewhat remarkable, that he should not have set down contented.

*Judgment on the nonsuit.*